579 So.2d 472 (1991)
STATE of Louisiana, Plaintiff-Appellee,
v.
William DICKERSON, Defendant-Appellant.
No. Cr90-896.
Court of Appeal of Louisiana, Third Circuit.
April 17, 1991.
*475 Bobby Pitre, Lake Charles, for defendant-appellant.
Elaine B. Solari, Asst. Dist. Atty., Lake Charles, for plaintiff-appellee.
Before STOKER, KNOLL and KING, JJ.
KING, Judge.
This appeal presents for consideration by this court whether the trial judge committed reversible errors during the various proceedings in this matter.
On March 7, 1990, William Dickerson (hereinafter defendant) was found guilty of possession of 400 grams or more of cocaine, a violation of La.R.S. 40:967(F)(1)(c). Because defendant had previous felony convictions in Alabama, a bill of information was subsequently filed charging him as a habitual offender. On April 27, 1990, defendant was sentenced to life imprisonment without benefit of parole, probation or suspension of sentence and was fined $500,000.00. Defendant timely appeals urging the following thirteen assignments of error:
(1) The trial court erred by denying defendant effective assistance of counsel during the initial stages of his case immediately subsequent to his arrest;
(2) The trial court erred by refusing to allow the defendant's request to order the State to fingerprint various items (physical objects) confiscated from the vehicle he was in at the time of his arrest and subsequent to arrest;
(3) The trial court erred by denying defendant's motion to sever his hearing on the motion to suppress from his codefendants;
*476 (4) The trial court erred by denying defendant's motion to sever his trial from his codefendants;
(5) The trial court erred by denying defendant's motion to reduce bond;
(6) The trial court violated defendant's constitutional right to due process by denying his motion to suppress evidence;
(7) The trial court erred at the hearing on the motion to suppress by concluding that the officers conducted a valid and legal traffic stop;
(8) The trial court erred by concluding that defendant was in constructive possession of cocaine;
(9) The trial court erred by admitting bags of clothing into evidence over the defendant's objection;
(10) The trial court erred in that the verdict reached at trial is contrary to the law and evidence;
(11) The trial court erred in that the sentence imposed upon the defendant was excessive;
(12) The trial court erred by denying defendant's motion for a new trial;
(13) The trial court erred by denying defendant's motion for post conviction verdict of acquittal.
On May 30, 1989, Corporal Bruce Cole of the Lake Charles Police Department was using radar to monitor traffic on Interstate 10 eastbound near Highway 171 in Calcasieu Parish, Louisiana. At approximately 7:45 P.M., Corp. Cole stopped a vehicle traveling east for speeding and following too closely to another vehicle. The vehicle was a 1979 brown two-door Cadillac with Alabama license plates and was occupied by five people. In addition to defendant, who was seated in the middle of the back seat, the other four occupants of the vehicle were Aaron Boozer, the driver, Christian Boozer, Aaron's brother, who was seated in the front seat on the passenger side, Ramona Hickman, who was seated in the back seat behind the driver, and David Green, who was seated in the back seat behind the front seat passenger.
After obtaining the driver's license of the driver, Aaron Boozer, and talking to him, Corp. Cole ran a check on the vehicle's license plates and discovered that none of the occupants was its owner. Aaron Boozer was then asked to exit the vehicle and to answer some questions about their destination. Boozer told Corp. Cole that they were returning to Alabama after having spent the day in Houston. Corp. Cole noticed that, while they were talking, Boozer became extremely nervous, would not make eye contact and repeatedly looked towards the rear of the vehicle. Corp. Cole's suspicions were aroused further by Aaron Boozer's answers and mannerisms and he requested that Boozer sign a voluntary consent to search form. Aaron Boozer responded that, since he was not the owner of the vehicle, he did not think he could sign the form. Corp. Cole informed him that, under Louisiana law, since the owner of the vehicle was not present, the driver of the vehicle was deemed to be in control of the vehicle and could give permission to a search of the vehicle. Aaron Boozer then signed the voluntary consent form to search the vehicle. While searching the trunk of the vehicle, Corp. Cole discovered two paper bags. When he looked inside one of the bags, Corp. Cole found some clothing and a smaller plastic bag containing a white powder, which was later determined to be approximately 510 grams of cocaine.
All five occupants of the vehicle were arrested and subsequently charged by the same bill of information with possession of over 400 grams of cocaine, a violation of La.R.S. 40:967(F)(1)(c).
The Boozer brothers and Ramona Hickman were released on bond. Defendant was unable to make his bond and so remained in jail. Defendant filed various pretrial motions, all of which were denied.
On March 6, 1990, defendant was tried alone because Aaron and Christian Boozer had pled guilty prior to trial; Ramona Hickman had been arrested in Alabama for parole violation and could not be brought to Louisiana for trial; and the charges *477 against David Green had been dismissed by the District Attorney's office.
At the trial, Aaron Boozer testified that he, his brother, Christian, defendant and defendant's girlfriend, Ramona Hickman, had a conversation concerning cocaine in an Alabama bar. Defendant told them that he was about to "go get a load" and asked the Boozers to help him drive to Houston, Texas in exchange for a share of the cocaine. The brothers agreed to drive with defendant to Houston and they then left their car at the home of defendant's father. All of the codefendants, who had been in the Alabama bar with defendant, got into a vehicle that defendant represented as his own and drove to Houston, Texas. When the four arrived in Houston, they checked into two motel rooms. The Boozers went to sleep and, when they awoke, they noticed that defendant's car was gone. Later, defendant and Ramona Hickman returned in the vehicle with David Green who was to ride back with them back to Alabama. The five were going back to Alabama when they were stopped by Corp. Cole.
After a two day trial, defendant was found guilty by a unanimous jury of twelve. The State announced its intention to file a habitual offender bill and it was filed on April 27, 1990. The trial judge ordered a presentence investigation report and set the sentencing date.
At the sentencing hearing, defendant was sentenced to life imprisonment without benefit of parole, probation, or suspension of sentence and was fined $500,000.00. Defendant timely appeals.

ASSIGNMENT OF ERROR NUMBER 1
Defendant contends in his first assignment of error that the trial court erred by denying him effective assistance of counsel during the initial stages of his case immediately subsequent to his arrest. Specifically, defendant contends that he was not adequately represented by his first appointed attorney who withdrew as counsel without speaking with him immediately after his arrest.
A claim of ineffective assistance of counsel is more properly raised in a petition for post-conviction relief, rather than by appeal. However, where the record contains evidence necessary to decide the issue, and the alleged ineffectiveness is raised on appeal by an assignment of error, this issue can be considered. State v. Seiss, 428 So.2d 444 (La.1983); State v. Heacox, 543 So.2d 101 (La.App. 3 Cir.1989).
The sixth and fourteenth amendments of the United States Constitution guarantee the defendant in a state criminal proceeding assistance of counsel for his defense. The U.S. Supreme Court has held that "The right to counsel is the right to the effective assistance of counsel." McMann v. Richardson, 397 U.S. 759, 771 n. 14, 90 S.Ct. 1441, 1449 n. 14, 25 L.Ed.2d 763 (1970). In outlining the convicted defendant's burden of proof in an ineffective assistance of counsel claim, the court has enunciated a twofold test. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
The first prong of the test requires a showing of deficiency on the part of the defense counsel; this inquiry examines whether counsel violated some duty to his client. State v. Berry, 430 So.2d 1005 (La.1983); State v. Hartman, 479 So.2d 948 (La.App. 3 Cir.1985), writ den., 486 So.2d 748 (La.1986), cert. den., 479 U.S. 843, 107 S.Ct. 156, 93 L.Ed.2d 96 (1986). The second prong of the test requires a showing of prejudice resulting from defense counsel's deficient performance. This inquiry examines whether "... there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, supra.
The record discloses that Mr. Lee J. Clay was appointed to represent defendant within the mandatory 72 hour period after his arrest as required by La.C.Cr.P. Art. 230.1. However, approximately twenty days later, Mr. Clay withdrew as counsel of record claiming that "he was unable to actively engage in the practice of law." *478 Immediately thereafter, the court appointed Mr. Daniel Bishop as counsel, and he filed several motions on behalf of defendant. However, defendant subsequently filed a motion to enroll as his own counsel, which was granted, and all of the motions previously filed by Mr. Bishop were dismissed. The trial court later appointed Mr. Bobby Pitre as court appointed counsel to assist defendant in his own representation and he represented and assisted defendant at arraignment and throughout the entire trial.
We find that defendant had effective assistance of counsel during all stages of his case. The record is clear that he was provided with court appointed counsel throughout the pretrial and trial stages. Defendant had appointed counsel available but instead chose to represent himself. The defendant has failed to show any deficiency on the part of any of his court appointed attorneys, or, even if some deficiency resulted from the changing of court appointed attorneys, to allege or show in what manner he was specifically prejudiced as a result of these changes of court appointed counsel.
Considering the foregoing reasons, this assignment of error lacks merit.

ASSIGNMENT OF ERROR NUMBER 2
Defendant contends in his second assignment of error that the trial court erred in refusing his request to order the State to fingerprint various items confiscated from the vehicle at the time of arrest. Defendant contends that the trial court should have ordered the State to conduct a fingerprint analysis of the plastic baggie in which the cocaine was found. Defendant relies on La.C.Cr.P. Art. 718 which only permits a defendant to inspect, copy, examine, test scientifically, photograph, or otherwise reproduce books, papers, documents, photographs, tangible objects, etc. which are in the possession or control of the State and which:
(1) are favorable to the defendant and which are material and relevant to the issue of guilt or punishment, or
(2) are intended for use by the State as evidence at the trial; or
(3) were obtained from or belong to the defendant. The State never conducted a fingerprint analysis test on the plastic bag. Because the State never conducted such a test on the plastic bag, we find the trial court was correct in denying defendant's request. La.C.Cr.P. Art. 718 only requires the State to allow a defendant to copy, examine and test the evidence or disclose any completed test results the State has in its possession. Article 718 does not permit the defendant to obtain an order from the Court to require the State to conduct tests on evidence.
Considering the foregoing reasons, this assignment of error lacks merit.

ASSIGNMENTS OF ERROR NUMBERS 3 AND 4
Defendant contends in his third and fourth assignments of error that the trial court erred in denying the motion to sever his case from that of his codefendants both at pretrial hearings and at trial. Specifically, defendant argues that because some of the codefendants' defenses were antagonistic, his motion to sever should have been granted.
Defendants who are jointly indicted are to be tried together unless the court finds that justice requires a severance. La. C.Cr.P. Art. 704. The courts have permitted a severance to codefendants whose defenses are antagonistic to each other. State v. Williams, 416 So.2d 914 (La.1982). Defenses are antagonistic when each defendant intends to exculpate himself by putting the blame for the offense on a codefendant. State v. Thibodeaux, 315 So.2d 769 (La.1975). However, a mere allegation that the defenses are antagonistic is insufficient because convincing evidence of actual antagonism must be presented to justify a severance. State v. Prudholm, 446 So.2d 729 (La.1984).
Denial of severance is not an abuse of discretion even though the codefendant's statement was inculpatory as to the defendant, where the thrust of the codefendant's defense was not to implicate defendant as the perpetrator of the crime, but simply to *479 deny his own involvement. State v. Brown, 527 So.2d 12 (La.App. 3 Cir.1988).
The motion to sever was filed on February 26, 1990, and was denied by the trial court after a hearing on February 28, 1990. Defendant contends that he was prejudiced at the motion to suppress because the trial court refused to grant the severance. We find this argument has no merit because the only issue at the motion to suppress was whether or not the driver freely and voluntarily consented to a search of the vehicle. There were no antagonistic defenses presented at this hearing and the codefendants did not place any blame on defendant. Rather, the record reveals that Aaron Boozer's testimony at the motion to suppress was, if anything, potentially beneficial to defendant because he claimed that his consent to search was not given freely and voluntarily.
The accused is not entitled to a severance as a matter of right but the decision is one resting in the sound discretion of the trial judge. A denial of a motion to sever will not be overturned on appeal absent a clear abuse of discretion. State v. Gaskin, 412 So.2d 1007 (La.1982).
Defendant also argues that he was prejudiced at the hearing of his preliminary examination by the court's refusal to grant the severance. The preliminary examination was heard on February 16, 1990, ten days before defendant filed his motion requesting a severance. Defendant cannot claim that the trial court erred in refusing to grant a severance before the preliminary examination when his motion was not even filed at the time of the hearing.
Defendant also argues that he was prejudiced at trial by the court's refusal to grant the severance. This argument has no merit because defendant was tried alone. Aaron and Christian Boozer pled guilty before trial. The charges were dismissed against David Green and Ramona Hickman was in prison in Alabama and could not be brought to Louisiana for trial.
Considering the foregoing reasons, these assignments of error lack merit.

ASSIGNMENT OF ERROR NUMBER 5
Defendant contends in his fifth assignment of error that the trial court erred by denying his motion to reduce bond. The trial court denied two separate motions to reduce defendant's bail from $100,000.00 to a lower amount.
Defendant's proper remedy for denial of his motion to reduce bond was to invoke the supervisory jurisdiction of the court of appeal. La.C.Cr.P. Art. 322. On appeal after conviction, the issue of whether the trial court should have reduced bond prior to trial is moot. State v. Jones, 332 So.2d 267 (La.1976).
We note that the record shows that at the hearings the trial court reviewed each of the factors listed in La.C.Cr.P. Art. 317 concerning the amount of a defendant's bail. Defendant has an extensive criminal record consisting of such offenses as unlawful flight to avoid confinement, escape charges, unlawful sale of controlled substances, a conviction for first degree murder, and resisting arrest. Considering this criminal record, defendant's ability and likelihood of fleeing was highly probable. Another factor considered by the trial court was the seriousness of the crime, because defendant was in possession of over 400 grams of cocaine and the fact that defendant lived out of state which affected the probability of his appearance. The trial court was correct in not reducing defendant's bond.
Considering the foregoing reasons, this assignment of error lacks merit.

ASSIGNMENTS OF ERROR NUMBERS 6 AND 7
Defendant contends in his sixth and seventh assignment of error that the trial court erred in denying his motion to suppress. Specifically, defendant claims that the search of the vehicle he was occupying was unlawful because he was illegally detained prior to the search and, therefore, the cocaine seized pursuant to the search should not have been admitted into evidence.
An investigatory stop is based on reasonable cause, a somewhat lesser *480 standard than probable cause. Reasonable cause to stop and question a suspect must be determined on a case-by-case basis; this is to be determined by the officer's ability to articulate specific reasons on which he bases his reasonable suspicion. State v. Rodriguez, 396 So.2d 1312 (La.1981); State v. Meyers, 520 So.2d 842 (La.App. 3 Cir.1987).
Corp. Cole testified at the hearing for the motion to suppress that he stopped the vehicle in which defendant was a passenger only after he clocked it with radar and noticed that it was speeding and following too closely to the proceeding vehicle. Thus, Corp. Cole was justified in detaining the vehicle in which defendant was riding for the purpose of issuing a traffic citation.
Corp. Cole asked for voluntary permission to search the vehicle only after he observed the vehicle's driver's nervous demeanor. The subsequent search of the vehicle was conducted only after Aaron Boozer, the driver of the vehicle, freely and voluntarily signed a consent to search form.
A search conducted pursuant to valid consent is an exception to the warrant and probable cause requirements of the law. State v. Tennant, 352 So.2d 629 (La. 1977), U.S. cert. den., 435 U.S. 945, 98 S.Ct. 1529, 55 L.Ed.2d 543 (1978). Consent to search is valid when it is freely and voluntarily given by a person who possesses common authority or other sufficient relationship to the premises or effects sought to be inspected. State v. Cody, 446 So.2d 1278 (La.App. 2 Cir.1984), citing U.S. v. Matlock, 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974).
Corp. Cole testified that Aaron Boozer freely and voluntarily signed the consent form. Initially, Boozer was hesitant to sign because he did not think he had the authority to consent. Corp. Cole explained to him that, as driver of the vehicle upon the owner's absence, he did have authority to consent.
Defendant claims that because Corp. Cole did not specifically tell Boozer that he was not required to sign the form, Boozer's consent was not free and voluntary. However, Corp. Cole testified that Boozer read the form which contained such language before signing it. While knowledge of the right to refuse consent is one factor to be taken into account, it is not determinative of the issue of the voluntariness of the consent. State v. Dunbar, 356 So.2d 956 (La.1978).
Whether consent was given is a question of fact to be determined by all of the facts and circumstances of the case. The trial judge's conclusions as to credibility are entitled to great weight. State v. Edwards, 434 So.2d 395 (La.1983). In his reasons for judgment, the trial judge properly analyzed the totality of the circumstances in the case and determined that the consent to search the vehicle was freely given.
Considering the foregoing reasons, these assignments of error lack merit.

ASSIGNMENTS OF ERROR NUMBERS 8, 9, 10, AND 13
Defendant contends in these assignments of error that: (1) The trial court erred by concluding that he was in constructive possession of cocaine; (2) The trial court erred by admitting the bags of clothing into evidence over his objection; (3) The verdict reached at trial was contrary to the law and evidence; and (4) The trial court erred by denying his motion for post-conviction verdict of acquittal.
In defendant's brief, he combines these assignments of error and contends the trial court erred by denying his motion for post-conviction verdict of acquittal. Specifically, defendant alleges that no rational trier of fact could have found him guilty of constructive possession of over 400 grams of cocaine. We will also discuss these alleged errors together.
When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, *481 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State ex rel Graffagnino v. King, 436 So.2d 559 (La.1983); State v. Duncan, 420 So.2d 1105 (La.1982); State v. Moody, 393 So.2d 1212 (La.1981). It is the role of the factfinder to weigh the respective credibilities of the evidence and, therefore, the appellate court should not second-guess the credibility determinations of the trier of fact beyond the sufficiency evaluations under the Jackson standard of review. See, State ex rel. Graffagnino, supra, citing State v. Richardson, 425 So.2d 1228 (La.1983).
In order for the State to obtain a conviction, it must prove the essential elements of the offense, possession of cocaine, beyond a reasonable doubt. Pursuant to La.R.S. 40:967(F)(1)(c), the State must prove beyond a reasonable doubt that the defendant knowingly or intentionally possessed 400 grams or more of cocaine.
Defendant claims that the prosecution failed to prove he was in possession of the cocaine seized. However, the prosecution does not need to show that defendant was in actual possession of the illegal substance in order to convict, only constructive possession. State v. Edwards, 354 So.2d 1322 (La.1978). A person may be in constructive possession of the substance, even though not in physical possession, if it is subject to his dominion and control. State v. Sweeney, 443 So.2d 522 (La.1983). In order to convict a person on the basis of constructive possession, something more than mere presence in the area where the drug is found must be shown. State v. Alford, 323 So.2d 788 (La.1975). Some of the factors to consider in determining whether or not a defendant exercises dominion and control are his knowledge that illegal drugs are in the area, his relationship with the person found to be in possession, his access to the area where the drugs were found, and his physical proximity to the drugs. State v. Love, 527 So.2d 62 (La.App. 3 Cir.1988); State v. Walker, 514 So.2d 602 (La.App. 4 Cir.1987).
Aaron Boozer testified that he, his brother, defendant, and Ramona Hickman, had a conversation with defendant concerning cocaine in an Alabama bar. Defendant told them that he was about to "go get a load" and asked the Boozers to help drive in exchange for a share of the cocaine.
Defendant was in a vehicle, which he represented as his own, containing cocaine and Boozer's testimony showed that it was defendant who initiated and executed a plan to obtain cocaine.
The defendant contends that the trial court erred in not granting his motion to order the various codefendants to try on the clothing, found in the clothes bag containing the cocaine baggie, in front of the jury. Defendant's purpose was to show that because the codefendants were similar in height and build, the clothing in the bag with the cocaine could have belonged to someone other than defendant. At trial, the State argued that, if the codefendants had to try on the clothing, then defendant should be required to do the same. The defendant objected to having to do anything based on his right against self-incrimination. The trial judge refused to order anyone to try on the clothes in front of the jury but, instead, ruled that he would allow either side to ask the witnesses their clothing sizes. The trial judge ruled that, because such information was demonstrative evidence, it would not fall within any prohibition against self-incrimination. State v. Square, 433 So.2d 104 (La.1983); State v. Reynolds, 473 So.2d 886 (La.App. 3 Cir.1985).
We find that the trial judge did not abuse his discretion or commit error in denying defendant's motion. Although defendant did not ask the codefendants their sizes, such questioning could have shown similarity in height and build, if it existed, and would have served defendant's purpose.
On April 27, 1990, defendant filed a motion for post-conviction verdict of acquittal, which was denied. A post-conviction judgment of acquittal should be granted only if the court finds the evidence, viewed in a light most favorable to the State, does not reasonably permit a finding of guilt. La.C. Cr.P. Art. 821(B). We find that when the evidence is considered in the light most *482 favorable to the prosecution, any rational trier of fact could have concluded beyond a reasonable doubt that defendant was knowingly and intentionally in constructive possession of over 400 grams of cocaine.
Considering the foregoing reasons, these assignments of error lack merit.

ASSIGNMENT OF ERROR NUMBER 11
Defendant contends in this assignment of error that the sentence imposed upon him was excessive.
Article 1, § 20 of the La. Constitution of 1974, prohibits cruel, excessive, or unusual punishment. A sentence which falls within the statutory limits may nevertheless be excessive under the circumstances. To constitute an excessive sentence, the court must find the penalty is so grossly disproportionate to the severity of the crime as to shock our sense of justice or that the sentence makes no measurable contribution to acceptable penal goals and, therefore, is nothing more than needless imposition of pain and suffering. The trial judge is given wide discretion in imposing a sentence and a sentence imposed within statutory limits will not be deemed excessive in the absence of manifest abuse of discretion. See State v. Doyle, 574 So.2d 563 (La.App. 3 Cir.1991), and the cases cited therein.
Under the habitual offender law contained in La.R.S. 15:529.1(A)(3)(b), a person sentenced to imprisonment for a fourth or subsequent felony shall be imprisoned for the remainder of his natural life, without benefit of parole, probation, or suspension of sentence if the present felony and at least two of the prior felonies involved violations of certain enumerated Louisiana laws, or of any crime punishable by imprisonment for more than twelve years.
In 1971, defendant was convicted of first degree murder in Alabama and received a twenty year sentence. In 1977, defendant was convicted by an Alabama court for unlawful sale of a controlled dangerous substance and received a five year sentence. In 1979, defendant received a five year sentence for violation of Alabama's grand larceny statute. In 1982, defendant pled guilty to assault with intent to rob and received four years and nine months from an Alabama court. In 1985, defendant was, again, convicted in Alabama for unlawful possession of a controlled dangerous substance and received a five year sentence.
Defendant's twenty year sentence for the first degree murder conviction obviously had a possible sentence that would satisfy the habitual offender statute. The conviction of unlawful sale of a controlled dangerous substance had a possible sentence of not less than two nor more than fifteen years. Al.Code, Vol. 14 § 20-2-70(a) (1977). The assault with intent to rob conviction had a possible sentence of not less than two nor more than twenty years. Al.Code, Vol. 12 § 13A-6-20 (1982). Finally, the unlawful possession of a controlled dangerous substance conviction also had a possible sentence of not less than two nor more than twenty years. Al.Code, Vol. 12§ 13A-12-211 (1985).
We find that defendant's life sentence was not excessive based on the defendant's extensive criminal record. Defendant has had numerous encounters with the criminal justice system which have resulted in at least 10 felony convictions. In addition to the felonies used to sentence defendant as a habitual offender, defendant was also convicted of manslaughter in 1965 and first degree murder in 1971 by the Alabama courts.
Additionally, the trial judge reviewed a presentence investigation report before imposing sentence which was available to the defense. The report shows defendant had both prior felony and misdemeanor convictions and was classified as a fourth offender. The trial judge noted immediately before imposing sentence that defendant stood before him a habitual criminal and that he, the trial judge, was unable to glean anything from defendant's background that would elicit leniency.
In addition to the prison sentence, a first conviction for possession of over 400 grams of cocaine carries a mandatory fine of not less than $250,000.00 and not more than *483 $600,000.00. La.R.S. 40:967(F)(1)(c). Defendant contends that the $500,000.00 fine imposed on him is excessive because he was declared indigent and had court appointed counsel. Defendant, citing State v. White, 476 So.2d 1162 (La.App. 3 Cir.1985), alleges that a court cannot impose a fine as a sentence and then convert it into a term of imprisonment solely because the defendant is indigent and unable to pay the fine. The trial court sentence ordering defendant to pay the fine did not provide that in default of payment that defendant would be imprisoned.
We note an error patent on the face of the record in this sentence as the trial court only imposed a fine upon defendant without providing that in default of payment thereof for imprisonment for a specified period not to exceed one year. Such a sentence, whether or not defendant is indigent, is illegal under State law. La. C.Cr.P. Art. 884; State ex rel. Benueth Morales v. Court of Appeal, Third Circuit, 575 So.2d 1389 (La.1991). However, an indigent person may not be incarcerated because he is unable to pay a fine which is part of his sentence. Bearden v. Georgia, 461 U.S. 660, 103 S.Ct. 2064, 76 L.Ed.2d 221 (1983); State ex rel. Benueth Morales v. Court of Appeal, Third Circuit, supra; State v. White, supra. La.R.S. 40:967(F)(1)(c) provides that upon a first conviction for possession of over 400 grams of cocaine that the trial court must impose a mandatory fine of not less than $250,000.00 and not more than $600,000.00. We are able to determine from the record that defendant is indigent as the trial court has already made this determination and provided defendant with court appointed counsel for purposes of both trial and appeal. However, because of the pronouncements of the United States Supreme Court in Bearden and the Louisiana Supreme Court in Morales, a sentence that provides for a jail term in the event of the default of payment of any fine imposed upon an indigent is unconstitutional under Federal and State law. On the other hand, a sentence that is not imposed in accordance with State law upon a defendant, whether the defendant is rich or poor, is also illegal. Thus the trial court was faced with an irreconcilable conflict, between constitutional principles and statutory law, to fashion a sentence upon the defendant, who is indigent. As the United States Supreme Court noted in Bearden, the State has a fundamental interest in appropriately punishing persons, rich or poor, who violate its criminal laws and a defendant's poverty does not immunize him from punishment. Our Louisiana Supreme Court has noted that La.C.Cr.P. Art. 886 permits the State to enforce collection of a fine in the same manner as a money judgment in a civil case. State v. Conley, 570 So.2d 1161 (La. 1990). Thus, the sentence imposed on defendant in this case, which provides for payment of a fine but not for a jail term in the event of a default of payment of the fine imposed, is no different than a mandatory fine imposed on a corporate defendant in a criminal proceeding, which could not serve jail time, and is no different than a judgment imposed in a civil matter upon an impecunious defendant. As has often been noted in the old axiom "You cannot get blood from a turnip" so, in all probability, you cannot collect money for payment of a criminal fine from an indigent defendant. However, in order to resolve this conflict between constitutional principles and statutory law, we hold that a sentence imposing a fine upon an indigent defendant, which does not provide for a jail term in the event of default of payment of the fine imposed, is a legal sentence under the laws of the State of Louisiana. For this reason, we find that the trial court's imposition of a fine upon the indigent defendant in this case, which did not provide for a jail term in the event of default of payment of the fine, is not excessive and is not an illegal sentence.
For these reasons, we find that this assignment of error has no merit.

ASSIGNMENT OF ERROR NUMBER 12
Defendant contends in this assignment of error that the trial court erred in denying his motion for a new trial. Specifically, defendant alleges he was prejudiced because a local television news program revealed that he had a previous criminal *484 record, which revelation influenced the jury in their deliberation.
The trial court found no merit to this argument and stated:
"To the motion for new trial based on alleged prejudicial television exposure during the trial, that motion is denied. This Court has faith in its sequestration order to the jury, sequestration in the sense that they were prohibited from discussing the case with each other or anyone else, prohibited from reading any newspaper accounts if any there be, prohibited from listening to any radio accounts if any there be and prohibited from viewing television accounts if any there be.
Without a showing that that order was violated, then the basis for the motion is without any substance or merit. So that motion is denied."
We find that the trial court properly denied defendant's motion because no actual prejudice had been shown. The merits of a motion for a new trial must be viewed with extreme caution in the interest of preserving the finality of judgments. As a general rule, a motion for a new trial will be denied unless injustice has been done. La. C.Cr.P. Art. 851; State v. Jackson, 253 La. 205, 217 So.2d 372 (1968). Defendant failed to show or even offer evidence of any prejudice resulting from the newscast. We note that jurors can properly testify as to whether their decision was improperly influenced by any extraneous prejudicial information, and they did not do so. La. C.E. Art. 606(B).
Considering the foregoing reasons, this assignment of error lacks merit.

ERRORS PATENT REVIEW
A review of the record for errors patent indicates that defendant was sentenced on April 27, 1990, the same day the trial court denied his motion for a new trial. La.C. Cr.P. Art. 873 requires a minimum of 24 hours between the denial of a motion for a new trial and sentencing. The record does not reflect a waiver of this delay by defendant.
In order for this to constitute reversible error, defendant must be prejudiced by the lack of a sentencing delay. State v. Gaspard, 441 So.2d 812 (La.App. 3 Cir.1983); State v. White, 404 So.2d 1202 (La.1981).
We find that defendant was not prejudiced by any lack of delay in sentencing. A period of over one month passed between the date of his conviction and sentencing. A presentence investigation report was prepared and thoroughly reviewed by the trial court and the defense before sentence was imposed. Before sentencing, defendant was given the opportunity to contest portions of the presentence investigation report. We find that any error in not delaying sentence did not have an impact on the fairness of the proceedings and does not constitute reversible error. A further review of the record indicates no other errors patent except for the sentence imposing payment of a fine without a default provision which we have previously discussed.
For the reasons assigned, defendant's conviction and sentence are affirmed.
AFFIRMED.